UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LOGAN ALEXANDER SPREWELL,

        Plaintiff,

v.                                               Case No. 24-cv-1541-pp

TAMARA ZIMMERLEE, *et al.*,

        Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 25), GRANTING DEFENDANT SCHOEMANN'S MOTION TO ENFORCE COURT ORDER (DKT. NO. 32), DENYING AS MOOT DEFENDANT SCHOEMANN'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE (DKT. NO. 32) AND DISMISSING CASE WITHOUT PREJUDICE**

---

Plaintiff Logan Alexander Sprewell, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights when he was confined at the Milwaukee County Community Reintegration Center. The court screened the complaint and allowed the plaintiff to proceed on a medical care claim against defendants Sergeant Tamara Zimmerlee and Nurse Jolean Schoemann based on allegations that they did not provide him with adequate medical care for his seizure disorder. Dkt. No. 9 at 4. On September 30, 2025, the defendants, who are represented by separate counsel, filed a joint motion for summary judgment on exhaustion grounds. Dkt. No. 25. The day after the defendants filed their motion, the court ordered that the plaintiff's response was due on October 30, 2025, and that if by that date the

1

court did not receive his response or an explanation for why he could not timely file a response, it would resolve the defendants' motion without considering a response from the plaintiff. Dkt. No. 30. The court sent the order to the plaintiff at Waupun Correctional Institution, where the Department of Corrections' Offender Locator shows that the plaintiff remains confined. See appsdoc.wi.gov/lop/details/detail. The court has no reason to believe that the plaintiff did not receive the court's September 30 order. The court has not received the plaintiff's response. As the court said it would do in its September order, it will rule on the defendants' motion for summary judgment on exhaustion grounds without input from the plaintiff; the court will grant the motion and dismiss the case without prejudice.[1]

I. **Defendants' Motion for Summary Judgment (Dkt. No. 25)**

A. Facts

The plaintiff was incarcerated at the Reintegration Center from October 26, 2024 through April 18, 2025, at which time he was released to another jurisdiction. Dkt. No. 27 at ¶1. At the Reintegration Center, the process for addressing administrative complaints was the Grievance Process, which was articulated in detail in the Resident Handbook. Id. at ¶¶2, 4. Incarcerated

---

[1] On November 12, 2025, defendant Schoemann filed a motion to enforce the court's order that it would resolve the defendants' summary judgment without considering a response from the plaintiff if he did not timely file a response. Dkt. No. 32. Schoemann also filed a motion to dismiss for failure to prosecute. Id. The court will grant Schoemann's motion to enforce the court's order. Because this order grants the defendants' motion for summary judgment on exhaustion grounds, the court will deny as moot Schoemann's motion to dismiss for failure to prosecute.

2

persons' complaints subject to this process include complaints about health, welfare, facility operations or complaints raising an issue of oppression or misconduct by an employee. Id. at ¶3. To voice complaints, incarcerated individuals were required to submit a completed grievance form on the electronic kiosk, or via a paper grievance form (which was available on each dormitory). Id. Incarcerated persons, including the plaintiff, were made aware of this process by being given a paper copy of the Resident Handbook upon booking into the facility, by reviewing the Resident Handbook that was posted on the walls of every dormitory in the Reintegration Center, by accessing the handbook on their tablets or by verbal explanations from dorm officers. Id. at ¶¶4-5. If an individual was confused or had any questions about the grievance procedure or the kiosks, both officers and lieutenants were trained to assist. Id. at ¶5.

During the plaintiff's incarceration, electronic kiosks were available in each dormitory at the Reintegration Center except for the segregation units. Id. at ¶6. The plaintiff was housed in a segregation unit for just two days, from November 19 through November 21, 2024; kiosks through which he could submit grievances were otherwise available to the plaintiff during the rest of the relevant time. Id. at ¶7. If a kiosk was unavailable for any reason, paper forms were available in all dormitories, including segregation units. Id. at ¶8.

Once an incarcerated individual submitted his grievance on the kiosk, it was assigned a request number and placed in a queue for the complaint examiner, Leann Cornell, to review. Id. at ¶10. Cornell either investigated the

3

grievance herself or assigned it to another staff member. Id. at ¶11. Once entered, grievances could not be edited or deleted from the system. Id. at ¶12. When an incarcerated person completed and submitted a paper grievance form to the corrections officer on duty in their housing unit, the corrections officer placed the completed paper grievance forms in the "outgoing" mailbox for the housing unit, where it was collected and delivered to Cornell. Id. at ¶13. Cornell made digital copies of the paper grievances she received by scanning and saving them into a computer file. Id. at ¶14. Once submitted, the grievance process was the same regardless of whether the grievance was initiated as a paper submission or submitted via the kiosk. Id. at ¶15.

The plaintiff had access to the grievance process at the Reintegration Center, either through the kiosk or in paper form, at all times during the relevant period. Id. at ¶21. The grievance process informed incarcerated persons of the following steps:

>1. Complete a grievance form on the Aramark kiosk.
>
>2. If you need help completing the form, ask the officer or request the assistance of an advocate. The completed grievance will be electronically submitted.
>
>3. Should the kiosk not be in service, you must ask your dorm officer for a paper form. Paper forms shall be completed fully and placed in the designated lock box.
>
>4. The assigned supervisor will review your grievance and send you a written response within ten (10) working days of receiving the grievance.
>
>5. A maximum of two (2) grievances shall be accepted each week by the department, per resident, pertaining to the same issue.

4

> 6. You must appeal the grievance decision within three (3) days of receiving it. The appeal is sent to the Shift Captain.

Id. at ¶16.

Grievances concerning Reintegration Center staff were investigated by Cornell, while grievances concerning medical treatment were directed to Wellpath (the Reintegration Center's contracted healthcare provider). Id. at ¶18. Once Cornell or the assigned staff member completed an investigation, a response was drafted and provided to the resident via the electronic kiosk system, regardless of whether the initial grievance was paper or electronic. Id. at ¶19. Incarcerated individuals who were unsatisfied with a grievance response had three days from their receipt of that response to file an appeal of the response; this step is required and is the final step of the grievance procedure. Id. at ¶20.

The plaintiff filed two grievances during the relevant time. Id. at ¶¶22-23. Both grievances were categorized as "Staff Grievance[s]," and pertained to incidents not relevant to the medical care allegations or the named defendants in his complaint in this case. Id. at ¶24. Despite remaining in custody at the Reintegration Center until April 18, 2025, the plaintiff did not file any other grievances or any specific grievance regarding the incident from his complaint or against either defendant. Id. at ¶25.

      B.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also

5

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

 C. Discussion

The defendants contend that the plaintiff failed to exhaust his administrative remedies because he did not submit any grievances pertaining to the events about which he complains in this case. Dkt. No. 26 at 5.

The Prison Litigation Reform Act (PLRA) says that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719

6

(7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit Court of Appeals applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted).

The Reintegration Center had an administrative process available to incarcerated individuals, which was set forth in the Resident Handbook and made available to all incarcerated persons, including the plaintiff, via electronic kiosk or paper grievance forms. Although the plaintiff filed grievances via the kiosk, he did not file a grievance regarding the medical care incident at issue in this case. The undisputed facts establish that the plaintiff did not file a grievance regarding his claims against the defendants, which means that he did not exhaust his administrative remedies. The court will grant the defendants' motion for summary judgment on exhaustion grounds and dismiss the case without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

**II. Conclusion**

The court **GRANTS** the defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 25.

The court **GRANTS** defendant Schoemann's motion to enforce court order. Dkt. No. 32.

The court **DENIES AS MOOT** Schoemann's motion to dismiss for failure to prosecute. Dkt. No. 32.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court

cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 26th day of November, 2025.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**